KNAPP, Appellant, v. SIOUX FALLS NATIONAL BANK, Respondent.

1. Trover and Conversion — Banks and Banking — Evidence— Materiality.

The defendant bank accepted a deposit of money from the plaintiff with instructions to pay it out in satisfaction of a certain mortgage on her lands. On an issue of a compliance with these instructions, the fact of whether or not she had since paid off the mortgage, there being no allegation in the complaint of a conversion of the satisfaction piece, is immaterial.

**2. Same—Forgery—Sufficiency of Evidence—Question for Court.**

In such a case where the plaintiff claimed that the evidence tended to show that the satisfaction piece taken by the bank was a forgery, and the evidence thereof consisted of admissions to that effect by the cashier and attorney of the bank, *held* not sufficient to warrant the submission of the question to the jury.

**3. Trial—Prima Facie Case — Question for Court — Conflict of Evidence.**

To entitle a party to have his case submitted to the jury because of a conflict in the evidence, he must first have established a *prima facie* right of recovery in a proper action.

**4. Same—Rule as to Submitting Case to Jury.**

In every case before the evidence is left to the jury, there is a preliminary question for the court, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict in favor of the party producing it on whom is the burden of proof.

(Argued May 16, 1888; affirmed May 25; opinion filed October 18, 1888.)

Appeal from the district court of Minnehaha county; Hon. JAMES SPENCER, Judge.

*Bailey & Davis,* for appellant.

The evidence on the part of the plaintiff tended to show that Reed called upon the cashier of the bank, saw the satisfaction there and demanded it, and that the cashier refused to deliver it. He then demanded the money and was refused. These facts showed title and right of possession in the plaintiff, and tended to show a conversion of the satisfaction.

It is true the demand and refusal were denied. There being a conflict in the testimony in this respect, it should have been submitted to the jury.

This action will lie for the conversion of the satisfaction piece. It is equivalent to the action of trover. Trover would lie for the conversion of any species of personal property. 6 Wait, A. & D. 128, 155, 156; *Payne* v. *Elliot,* 54 Cal. 339; *Booth* v. *Powers,* 56 N. Y. 22; *Daggett* v. *Davis,* 53 Mich. 35, 18 N. W. Rep. 548; *Ayers* v. *French,* 41 Conn. 151; *McAllister* v. *Kuhn,* 96 U. S. 87.

The measure of damage was *prima facie* its face value, which was the amount of the debt it discharged.    *Booth* v. *Powers*, 56 N. Y. 22; *Baker* v. *Drake*, 53 N. Y. 211; *Thayer* v. *Manly*, 73 N. Y. 305.

The testimony offered by the plaintiff to show that she had since been compelled to pay the money was admissible upon the question of damages.

A delivery of the money upon a forged satisfaction was a conversion of the money for which this action could be maintained.    6 Wait, Ac. & D. 133; *Griswold* v. *Judd*, 1 Root, (Conn.) 221.

Bankers are bound to know the signatures of those with whom they deal, and, if they pay money on forged paper, they are liable.    *Weisser* v. *Denison*, 10 N. Y. 68; *Frank* v. *Chemical Nat. Bank*, 84 N. Y. 209.

There was evidence that the satisfaction was a forgery, and the case ought to have been submitted to the jury.


*H. H. Keith*, for respondent.


The plaintiff wholly failed to prove a cause of action against the defendant.

The complaint alleges a conversion of the money deposited, while the evidence introduced by plaintiff clearly showed that the defendant paid the money over to Flagg pursuant to the instructions given at the time of the deposit.

Counsel for plaintiff insist that the question as to whether or not the satisfaction piece was a forgery should have been submitted to the jury, but there was no evidence whatever offered upon that subject, and consequently nothing for the jury to determine.

Conversion of the satisfaction piece was neither alleged in the complaint nor proved upon the trial; hence it is unnecessary to argue as to its property characteristics, or the measure of damages.

The plaintiff having failed to make a case against the defend-

ant within the issue, it was the duty of the court to direct a verdict for the defendant. *Schofield* v. *C., M. & St. P. Ry. Co.*, 114 U. S. 615, 5 Sup. Ct. Rep. 1125; *Randall* v. *B. & O. Ry. Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322; *Board of Com'rs* v. *Clark*, 4 Otto, 278; *Finney* v. *N. P. R. R. Co.*, 3 Dak. 270, 16 N. W. Rep. 500; *Algur* v. *Gardner*, 54 N. Y. 360; *Grand Trunk R. R. Co.* v. *Nichol*, 18 Mich. 170; *Hynds* v. *Hays*, 25 Ind. 31.

FRANCIS, J. The plaintiff in his complaint alleges, in substance:

"I. That the defendant was a banking association under the laws of the United States, and located at Sioux Falls, Dakota.

"II. That the plaintiff had assumed and become liable to pay a mortgage for $300 to one John B. Trevor, on certain real estate in Brookings county, which she purchased subject to said mortgage. That prior to July 26, 1883, default was made in the condition of said mortgage, and foreclosure proceedings commenced by advertisement. That the plaintiff, by her agent, Thos. Reed, on the 26th day of July, 1883, met A. M. Flagg, the attorney who had said foreclosure proceedings in charge for said Trevor, at Sioux Falls, and with the defendant as a third party entered into an agreement whereby said Flagg was to procure from said Trevor a duly-executed satisfaction of said mortgage, and deliver the same to the defendant, the defendant to pay the sum of $385 in full for the discharge of said mortgage, interest, and cost, which sum the plaintiff agreed to and did deposit with the defendant, and the defendant received the same, and promised the plaintiff that it would safely keep said sum for the plaintiff until said Trevor presented a duly-executed satisfaction of said mortgage, if within a reasonable time, and deliver the same to the defendant, then the defendant to pay over to said Trevor the sum of $385, and to deliver said duly-executed satisfaction to the plaintiff on request; and in case said Trevor did not within a reasonable time present such satisfaction, to return the money to the plaintiff; and, although a reasonable time elapsed, the said Trevor has not presented to the

defendant such satisfaction, nor has defendant paid to plaintiff said sum of $385, or any part thereof.

"And after such reasonable time had elapsed, the plaintiff caused said satisfaction to be demanded of the defendant, and defendant neglected and refused to deliver the same to the plaintiff, and thereafter the plaintiff demanded from the defendant the sum of $385, and defendant utterly refused to pay the same to the plaintiff, and converted the same to its own use.

"III. That since that time the said John B. Trevor has foreclosed said mortgage, and the plaintiff will be compelled to redeem the same on or before the 22d day of August, 1885, in consequence of the defendant's failure to pay over to the plaintiff said $385, or to deliver to plaintiff said satisfaction."

The defendant filed an amended answer, in substance as follows:

"I. Denies all the allegations of the complaint except those expressly admitted.

"II. Admits that the defendant was a banking association.

"III. Alleges that on or about July 27, 1883, one Thomas Reed and A. M. Flagg came to defendant's place of business, and said Reed stated to the cashier that he had $385 he wished to leave with the defendant, to be paid to said Flagg when he should leave with the defendant a satisfaction piece of a certain mortgage, which he had sent for, from John B. Trevor, of New York. That defendant, to accommodate the parties, and without compensation, took said $385 from said Reed for the purpose aforesaid. That within a few days said Flagg delivered to the defendant's cashier the satisfaction as agreed by the parties, and thereupon defendant's cashier paid to said Flagg said $385, as directed by said Reed. That within a short time thereafter defendant's cashier delivered said satisfaction piece to R. F. Pettigrew, upon the written order of said Reed, and averred that it followed the instructions of the parties in all respects; and acted for them in good faith as an accommodation, and without pay or charge. And defendant denied all liability or plaintiff's right to recover in this action. And that there is a mis-

joinder of parties plaintiff, in this: that Thomas Reed should have been made a party plaintiff, if any one."

### PLAINTIFF'S BILL OF EXCEPTIONS.

This action was tried at the November term, 1887, of the said court, on the 25th day of November, by jury, the Hon. JAMES SPENCER, Judge, presiding.

The complaint and amended answer are referred to, and made a part of these exceptions.

Thomas Reed, a witness produced by plaintiff, testified as follows:

"I reside in Arlington, Kingsbury county, Dakota. Am acquainted with the plaintiff in this case. She is mother of my wife. I know of there being a mortgage when she assumed on the north-west quarter of section thirty-one, township one hundred and one, range fifty-two, in Brookings county. There was $385 due at the time I settled the matter under that mortgage. I was verbally appointed agent by the plaintiff to settle. She furnished me money to pay the mortgage. I came to Sioux Falls, and called on one Flagg, attorney for John B. Trevor, the holder of the mortgage, and arranged terms of settlement with him. I was led to call on Mr. Flagg by seeing the land advertised for sale in one of the papers, under a mortgage. Mr. Flagg asked me to pay him the money, and he would procure a satisfaction. I told him there was a better way; I would leave the money in the bank, so that it would be safe, and when he procured the satisfaction he could draw the money from the bank. We went to the defendant bank, and he introduced me to Mr. Norton, the cashier. I told Mr. Norton I had arranged with this gentleman, as attorney, for the amount of money I wanted to leave to satisfy a mortgage that was being foreclosed on some land, and asked him if he would receive it there until he got a satisfaction. He said he would do it, and I left him $385, and a copy of the slip from the paper wherein this sale was advertised, showing what land the mortgage covered that the satisfaction should be for. That was a notice of advertisement of fore-

closure.    There was something stated there about my acting for Harriet M. Knapp.    I would not be positive that it was spoken to Mr. Norton that I was agent for her.    He stood inside the counter, and I was outside.    I was talking with him in regard to the money, and I think, when I paid him the money, that I made the statement whom I was acting for.

[Paper shown witness.]

"I should say that it is the notice that I left with Mr. Norton at the time that I have stated."

Plaintiff now offered notice in evidence, marked "Exhibit A," dated June 6, 1883, signed "JOHN B. TREVOR, Mortgagee," which exhibit was admitted in evidence that is referred to.

"I did not explain to him who Mrs. Knapp was.    The explanation I gave was, she was the owner of the land.    I informed him for what purpose I was paying this money.    He said he would keep it safely until he got a proper satisfaction for the mortgage that that paper called for.    About two or three months after that I wrote to the defendants asking them what was done in the matter in getting me a satisfaction.    I received a reply to that letter, stating that they had received a satisfaction.    Some three or four weeks after the first letter, I wrote them again, and received a reply to that.

[Paper shown witness.]

"That is a reply that I received to the second letter I have spoken of."

Letter marked "Exhibit B," and offered in evidence by plaintiff and read to the jury, as follows:

"LAW OFFICE OF HOSMER H. KEITH.

"SIOUX FALLS, DAK., Oct. 22nd, 1883.

"*Thos. Reed, Esq.*

"DEAR SIR:    I learned some time ago that there had been left with the Sioux Falls National Bank a satisfaction piece purporting to have been executed by John B. Trevor, of New York, to one Bennett.    I called at the bank, and found a satisfaction piece there, purporting to have been executed by Mr.

Trevor, and found it was a forgery. The cashier did not know where Mr. Reed was, so I could not write him. I notified him not to deliver satisfaction to any one, as it was a forgery. The cashier has notified me that he received a letter from you to forward the satisfaction piece, mortgage, and note. Mr. Flagg has neither the mortgage nor notes. The written instructions to the bank was to pay the money to Flagg when satisfaction was left there, which he did as directed. The mortgage still remains a valid lien on the land. Mr. Trevor has received the money, and has given no satisfaction piece. I told the cashier I would answer the letter to you. You had better attend to the matter. The forged satisfaction will be held in the custody of the law to await the action of the grand jury.

"Very truly,

"H. H. KEITH,
"For J. B. TREVOR."

"In consequence of this letter I came down to Sioux Falls the latter part of October or the first of November, 1883, and went to defendant's bank and saw Mr. Norton, and told him that I wanted my money from the bank that I had left there. He said he would not give it back; that he paid the money out as I had directed, and he thought that was all the authority he had; that I had not paid him anything for the expense in the matter; that he had complied with what I had requested him to do, and he could not give the money back to me. He said he had done just as I had requested him to do; consequently he was not liable to me for the money, and he would not pay it back. He refused to give up the satisfaction, and said that he was notified not to let that go. I could not swear positively who he said notified him. He said it was a forgery, and it was so nicely executed one couldn't hardly tell it from the original. He had it there, and showed it to me. I demanded it of him, and he said he was notified not to give it up. I told him that I wanted my money. He said he could not give it to me; that he had complied, just as I had told him, with the satisfaction. I saw this satisfac-

tion there,—the piece they claimed was the satisfaction they got. I did not know anything about whether it was a forgery or not, only as they told me.

"*Question.* Since then, has Mrs. Knapp paid that mortgage again?

"*Defendant's Counsel.* Objected to as incompetent and immaterial.

"*Court.* Objection sustained."

Plaintiff's counsel duly excepted.

"*Witness.* At the time I left the money with Mr. Norton, I do not think I gave him any written instructions as to what should be done with it. To the best of my belief I left no instructions, except that I left the paper that gave a description of the mortgage that I was to get a satisfaction for."

Charles L. Norton, called and sworn in behalf of the plaintiff, examined by Mr. Bailey, testified as follows:

"I reside in the city of Sioux Falls. Was cashier of the Sioux Falls National Bank during the years 1883, 1884, and 1885. I have a registry of the certificates of deposit of July, 1883, here. I made a certificate of deposit in this account that we are talking about. That certificate of deposit is numbered 223, and the record of it is on page eight of this register. [Page eight of register, marked 'Exhibit C,' and certificate, marked also 'Exhibit C.'] I issued no certificates to anybody on that date; nobody took any certificates. This was a memorandum of deposit and kept in the bank."

Plaintiff now put the page of record, marked "Exhibit C," in evidence, as follows: "Date, July 28. Amount, $385. Number, 223. Date, 27. To whom issued, Thos. S. Reed."

"This entry is in regard to that,—a memorandum of the certificate. That is the record. The date of the entry of this certificate of deposit is July 27th, $385; and the date of the record of the payment of it is July 28th, $385. *Cross-Examined by Mr. Keith.* This certificate which the counsel has inquired about was made at that time by me. It was issued merely to keep a record of the transaction of this $385 deposit by Reed

and Flagg to be turned over to Flagg upon the delivery of the satisfaction piece. There were instructions connected with the deposit. They were pinned to the certificate at the time. [Paper shown witness.] Those are the instructions. [Exhibit A shown witness.] That is the slip that was with it. The certificate of deposit, the instructions, and advertisement marked 'Exhibit A,' are the three papers that were together. These are all a part of the same transaction. These three papers were pinned together at that time in the presence of Mr. Flagg and Mr. Reed, and kept by me in the bank, for the purpose of carrying out the instructions."

The certificate of deposit, the written instructions, and advertisement of foreclosure sale, identified by witnesses, and marked "Exhibit D," offered in evidence by defendant, and read to the jury, as follows:

"Exhibit D.

"No. 223.                    Sioux Falls, Dak., July 27, 1883.

"(See instructions attached.)

"This certifies that Thos. Reed has deposited in the Sioux Falls National Bank, three hundred eighty-five and 0-100 dollars.

"Credit of himself or A. M. Flagg, payable in bankable currency upon return of this certificate properly indorsed.

"385.                    C. L. Norton, Cashier."

Upon the face of which was the following indorsement: "Paid July 18th, 1883. Sioux Falls National Bank." And upon the back of which certificate was the following indorsement: "A. M. Flagg. [Instructions attached to certificate.] $385, deposited by Thomas Reed, to be paid over on presentation of a duly-executed satisfaction of the mortgage described in the annexed printed notice, from John B. Trevor, mortgagee."

"*Witness.* That signature on the back of the certificate is the signature of A. M. Flagg. He indorsed that on the 28th day of July. Mr. Flagg brought a satisfaction of mortgage on

the 28th day of July, and I paid him the money that had been deposited. At the time Mr. Flagg and Mr. Reed came to the bank there were no other or different instructions than those contained in this memorandum [Exhibit D] that had been introduced in evidence. Mr. Reed and Mr. Flagg came into the bank together, and all the business relating to the deposit of the $385 and these instructions was all done while they were together. *Redirect Examination by Mr. Bailey.* The name of A. M. Flagg in there is in my handwriting. That was all done at the same time. These instructions came in with the money. I do not know that Mr. Reed handed them in. I could not state as to that. It came in with the money. Mr. Flagg did not hand me these instructions the next day. If I recollect right, they only left the advertisement at first, and I said, ' You will' have to leave your instructions,' and Mr. Flagg and Mr. Reed stepped back and wrote the instructions, and put them with the advertisement. I think the instructions were written on a figuring pad. It was probably something on the counter. There was an order from Mr. Thomas Reed, presented to me by Mr. Pettigrew, for me to deliver up this satisfaction of mortgage."

Order produced and marked "Exhibit E," and offered (by defendant) and received in evidence, and read to the jury, as follows:

"Exhibit E.

"Sioux Falls, Nov. 6, '83.

"*C. L. Norton, Cashier of Sioux Falls National Bank.*

"You will please let Mr. R. F. Pettigrew have the discharge left by A. M. Flagg, of mortgage on the N. W. of 31–111–52,

"And oblige,                                    Thos. Reed."

"*Witness.* Mr. Pettigrew brought this order to me, and I handed over the satisfaction of mortgage upon the order. I could not state what date he brought it; whether it was at the date of the order or not. I had seen Mr. Reed a few days be-

fore that, and stated to him that I would give it up, but had been instructed not to. I do not recollect of ever having any talk with Mr. Keith about this affair about October 22, 1883. I think Mr. Keith did business for our bank about that time. I could not say whether I saw Mr. Reed in our bank between October 22 and November 16, 1883, or not. I could not say what date it was. I did not tell him then that I could not give up the satisfaction. He did not demand the satisfaction of me, nor did he demand the money of me. He never demanded any money or satisfaction of me. I do not recollect whether he came there to the bank on business or not. I think he was there, but I do not recollect that he had any business there. I don't remember anything that he said. He never asked me for the money. I do not think we received any letter from Mr. Reed about the 1st of October, asking for the satisfaction. I haven't any recollection of receiving any letter. I have looked over the files to see if I could find any, and I could not. I never at any time refused or declined to deliver to Mr. Reed the satisfaction or mortgage."

Thomas Reed, recalled by plaintiff, and examined by Mr. Bailey.

"[Exhibit D shown witness.] The first time I saw that was at the counter, right here in this court-room. I never handed anything of that kind to Mr. Norton. That is not my signature. [Exhibit E, shown witness.] That is not my signature. I never gave that order."

A. A. Polk, called and sworn in behalf of the plaintiff, and examined by Mr. Bailey, testified as follows:

"I came to Sioux Falls about the 1st of March, 1880, and from that time until 1883 Mr. Flagg was an active attorney in this court."

Plaintiff rests.

C. L. Norton, recalled in behalf of the defendant, examined by Mr. Keith, further testified as follows:

"There were no other instructions given me except the written ones. These instructions were either written by Mr. Flagg

or Mr. Reed at the time they were in the bank. I requested instructions in regard to the matter, and Mr. Flagg stepped to the check-desk outside of the counter, and wrote these instructions, he and Mr. Reed together, and passed them in as instructions to govern me in the transactions. I pinned the instructions, the certificate of deposit, and notice of sale together, and they have remained together ever since. Mr. Reed did not say that he was acting as agent for anybody. He did not say anything about Harriet Knapp. I never heard of Harriet Knapp until this suit was commenced. I did not state to Mr. Reed that it was a very good forgery. I never knew from what Mr. Reed said that he was going to look to the bank for the money. He never made any claim at any time before the commencement of this action against the bank for the money. *Cross-Examination by Mr. Bailey.* I never took Mr. Reed into the bank and showed him what I claimed to be the real signature of Mr. Trevor. I never showed him anything of the kind. I do not know that I ever saw Mr. Trevor's signature."

Defendant rests. Evidence closed.

The defendant's counsel asks the court to direct a verdict for the defendant.

I. The plaintiff has failed to prove a cause of action.

II. Upon the evidence, as it now stands in the case, the plaintiff is not entitled to recover.

III. The evidence tends to show that the money deposited in the Sioux Falls National Bank was in the nature of a special deposit, and the defendant, being a national bank, is not responsible, in an action of this kind, only for a gross negligence; and that it is incumbent upon the plaintiff to show, in order to make the bank responsible in any event, that it was the custom of the bank to receive special deposits, and that it came within the knowledge of the directors, and the directors approved the same; and no such proof has been shown or attempted to be shown in this case.

IV. The testimony on the part of the plaintiff tends to show and does show that the Sioux Falls National Bank, by C. L.

Norton, its cashier, received this money under written instructions, and that he followed these instructions, and paid the money over as instructed, and delivered the satisfaction piece received, in pursuance of the instructions given him by Mr. Flagg and Mr. Reed, to R. F. Pettigrew, by an order made by Mr. Reed, and presented by Mr. Pettigrew to the bank.

"*Court.* GENTLEMEN OF THE JURY: The court is of the opinion, under the evidence in this case, that there is no contradiction of the evidence, and no question of fact to leave to you to determine. I therefore direct you to return a verdict in favor of the defendant."

Plaintiff's counsel excepted to the direction of the verdict; whereupon the jury returned the following verdict:

"We, the jury, find all of the issues in the above-entitled action against the plaintiff and in favor of the defendant, and that the plaintiff is not entitled to recover in this action."

Afterwards, on the 25th day of November, 1887, judgment was rendered upon said verdict for the defendant, to which the plaintiff excepted.

We hereby acknowledge and stipulate that the foregoing bill of exceptions contains a fair and correct statement of all of the evidence introduced, and of all the objections taken, and motions, rulings, orders, and decisions made at the trial, and the exceptions thereto.

BAILEY & DAVIS,
Attorneys for Plaintiff.
H. H. KEITH,
Attorney for Defendant.

The foregoing bill of exceptions settled and allowed March 23, 1888.

### ASSIGNMENT OF ERRORS.

I. The court erred in sustaining the objection to the question: "Since then, has Mrs. Knapp paid that mortgage again?" And in excluding testimony upon that subject.

II. The court erred in sustaining defendant's motion to direct

a verdict for the defendant upon the grounds assigned by defendant.

III. The court erred in withdrawing the case from the consideration of the jury, and directing them to return a verdict for the defendant.

(a) There was evidence tending to show a conversion of the money.

(b) There was evidence tending to show a conversion of the satisfaction. ·

(c) There was evidence tending to show that the satisfaction was a forgery.

(d) The evidence upon material facts was contradictory, and should have been submitted to the jury.

IV. The court erred in receiving said verdict for the defendant.

V. The court erred in rendering judgment on said verdict for the defendant.

VI. Because the verdict and judgment are against the law.

The contention of counsel for the appellant is summed up in their insistment that "the court erred in sustaining the objection to the question, 'Since then has Mrs. Knapp paid the mortgage again?' and in excluding testimony on that subject."

That "the evidence upon material facts was contradictory, and should have been submitted to the jury."

And that "the court erred in withdrawing the case from the consideration of the jury, and directing them to return a verdict for the defendant."

And "in rendering judgment on said verdict for the defendant."

Their contention falls, on being brought face to face with the record.

From an inspection of the record,—which, by stipulation of counsel and allowance of the court, contains, as part of the bill of exceptions, "a fair and correct statement of all the evidence introduced" at the trial,—we are of the opinion that whatever right of action the plaintiff (appellant) might be permitted to

maintain in the nature of *assumpsit*, or for negligence of the defendant bank as bailee, the said plaintiff, in the trial of this action against said defendant bank in the district court, failed to prove the cause of action stated in her complaint, and did not make against said defendant bank a *prima facie* case of conversion of either the money deposited with it or the mortgage satisfaction piece.

Counsel for appellant urge that "the testimony offered by the plaintiff to show that she has since been compelled to pay the money (embodied in said question : 'Since then has Mrs. Knapp paid the mortgage again?') was admissible upon the question of damages for the conversion of the satisfaction."

A complete answer to this is found in the fact that the complaint neither alleges the conversion of the satisfaction piece, nor claims damages for such conversion; and, we may add, the rejection of this question worked no injury to the plaintiff, as she failed (as already observed) to make even a *prima facie* case of conversion of the satisfaction piece or of the money, necessary to be made out in order to render the question of damage or the measure of damage material.

As to the admissibility of the said question, ruled out in the district court, had the issue and the evidence made a case of conversion, either of the money or of the satisfaction piece, or as to the damage or the measure of damage, in that event no decision is essential, and this court is therefore silent with respect thereto.

As the case stood when the lower court directed a verdict for the defendant, there was no conflict of testimony on material points.

The testimony offered on behalf of the plaintiff, (appellant,) not contradicted, but corroborated and strengthened, by that presented for the defendant, (respondent,) shows that the defendant received the money and paid it out upon a satisfaction piece in apparent accord with the instructions given when the money was deposited.

Counsel for appellant press the point that there was a con-

flict in the testimony respecting the demand for the money and for the satisfaction piece, and the refusal of the defendant to de- liver either, and that this should have been submitted to the jury.

Such conflict, however, would not render necessary the submis- sion of the case to the jury, unless there was at least a *prima facie* case of conversion to go to the jury, and in which they could determine such conflict; and, as we have seen, no such .case existed in the district court when the verdict for defendant, was directed.

This reasoning will apply, with equal force, to the other points upon which it is claimed for the appellant there was a contra- diction or conflict in the testimony.

It is also asserted, in support of this appeal, that "there was evidence tending to show that the satisfaction was a forgery," and this should have been submitted to the jury.

It is not necessary to discuss the weight or effect of the proof that the satisfaction piece, received by the bank, (defendant,) and on receipt of which it paid out the money, was a forgery, as there was no testimony in the case on that point proper to be submitted to the jury, or from which they could have found as a fact that the said satisfaction piece was a false one; nor was. the forgery of the satisfaction piece brought in issue, or alleged, either in the complaint or the answer.

. An examination of the case shows that all the testimony re- lating to the forgery of the satisfaction piece was as follows, namely:    That of Thomas Reed, for plaintiff, who, referring to C. L. Norton, cashier of the defendant bank, testified: "He said. it was a forgery, and it was so nicely executed one couldn't hardly tell it from the original;" and the further testimony of said Reed : "I did not know anything about whether it was a forgery or not, only as they told me."    And the statements in the letter of H. H. Keith, (Exhibit B for plaintiff:) "I called at the bank, and found a satisfaction piece there purporting to have been executed by Mr. Trevor, and found it was a forgery."    "I notified him (the cashier) not to deliver satisfaction to any one, as it was a forg-

ery."   "The forged satisfaction will be held in the custody of the law, to await the action of the grand jury."   And the testimony of said C. L. Norton, when called in behalf of defendant: "I did not state to Mr. Reed that it was a very good forgery;" and, on cross-examination: "I never took Mr. Reed into the bank, and showed him what I claimed to be the real signature of Mr. Trevor.   I never showed him anything of the kind.   I do not know that I ever saw Mr. Trevor's signature."

It is evident that, even had the question of the forgery of the satisfaction piece been at issue in the case, this testimony alone would not have been sufficient to make a *prima facie* case on the point of said forgery, nor would it have presented a conflict or contradiction of material testimony to be left to the jury.

The falseness of an instrument cannot be shown by testimony of this class or extent.

The rule governing courts in directing the verdict of a jury, after the mutations incident to most rules of practice, has come to be well established in the modern development of jurisprudence.   Noting the existence of cases "which go a long way to hold that, if there is the slightest tendency in any of the evidence to support plaintiff's case, it must be submitted to the jury," the court, in the case of *Improvement Co.* v. *Munson*, 14 Wall. 448, said: "Recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

On this same point the court in *Pleasants* v. *Fant*, 22 Wall. 116, 123, said: "It is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor,—that is the business of the jury; but conceding to all the evidence offered the greatest probative force which,

according to the law of evidence, it is fairly entitled to, is it sufficient to justify a verdict?" The same rule is reiterated in *Schofield* v. *Railway Co.*, 114 U. S. 615–619, 5 Sup. Ct. Rep. 1125, (citing cases,) when the court says: "It is the settled law of this court that when the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." See, also, *Marshall* v. *Hubbard*, 117 U. S. 415–419, 6 Sup. Ct. Rep. 806; and *Railroad Co.* v. *Bank*, 123 U. S. 727–739, 8 Sup. Ct. Rep. 266; and *Finney* v. *Railroad Co.*, 3 Dak. 270, 16 N. W. Rep. 500.

The case at bar comes within this rule. The proper verdict was one against the plaintiff, and for the defendant, and the court did not err in directing it.

Neither did the court err in rendering judgment for the defendant on return of the verdict as directed. The judgment of the district court is affirmed. All the justices concurring.