## McKEEVER v. HOMESTAKE MINING CO.

1. If the facts are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury.

2. An employer is not bound to indemnify an employe for injuries suffered by the latter in the ordinary risks of the business in which he is employed.

(Opinion filed April 5, 1898.)

Appeal from circuit court, Lawrence county.

Action to recover damages for the death of plaintiff's husband. Judgment for defendant. Plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*U. S. G. Cherry* and *Frank McLaughlin* (*Dudley H. Chase*, of counsel), for appellant.

All inferences which could be legitimately drawn from any of the evidence were for the jury and it was error for the court

to withdraw the case from the jury if there was any substantial conflict in the evidence. Marshall v. Mining Co., 1 S. D. 355, 47 N. W. 290; Seder v. Railroad, 13 S. W. 714; Sweet v. Railroad, 6 S. D. 281, 60 N. W. 77; Haugen v. Railroad, 3 S. D. 394, 53 N. W. 773; Trihay v. Min. Co., 11 Pac. 612; City of New Albany v. Ray, 29 N. E. 611; Weber v. Railroad, 58 N. Y. 455; Hackford v. Railroad, 53 Id. 654; Solen v. Railroad, 13 Nev. 132; Lighthouse v. Railroad, 3 S. D. 518; Ernest v. Railroad, 35 N. Y. 9.

*G. C. Moody*, for respondent.

"If a workman knows, or by proper inquiry can know, that his fellow servant is a careless person, and continues to work with him, making no complaint to the master, and not calling his attention to it, he must be held to have assumed the risk and hazard arising therefrom, and cannot recover for an injury resulting from such fellow servant's carelessnes, even though the master also knew that the fellow servant was careless." Hatt v. Nay (Mass.), 10 N. E. 807; Acme Coal Co. v McIver, 38 Pac. 596; Beech, Contrib. Neg. § 136; Victor Coal Co. v. Muir, 38 Pac. 378; Railroad v. O'Brien, 16 Colo. 225, 27 Pac. 701.

HANEY, J. In operating its gold mines near Lead City, defendant made use of a vertical shaft, about 500 feet in depth, divided into what were designated as the north and south compartments. There was a cage in each compartment, which was raised by means of a steam engine at the surface, and lowered by means of a brake near the engine. There were two bells in the hoist, to each of which was attached a wire cord extending the length of the shaft, and passing through each compartment. There was a gong from which a hemp rope extended to either end of the shaft. There were stations in the shaft about 100 feet apart, where the cages were loaded and unloaded. Whenever any person desired a cage brought to any particular station, he would sound the gong according to a

well-known code of signals, and the man in charge of the required cage, called a "cage tender," would signal the engineer and brakeman by means of the wire cord and bell belonging to his compartment. If the signal was given to raise a cage, the brakeman would throw that cage upon the engine, and the engineer would raise it with the engine to the proper station. If the signal was to lower it, the brakeman would release the brake, and permit the cage to descend to the proper station. It was the brakeman's duty to answer signals, as they were given on the bells, by throwing the proper cage upon the engine, or lowering it, as the case might be; and it was his duty to throw upon the engine or lower a cage when so directed by the engineer. There was an appliance in the hoist which indicated at all times the position of each cage. The rules of the company, posted at each station, allowed no one to ring the signal bells, except cage tenders. January 20, 1893, plaintiff's husband, in charge of the south cage, went down with a load of lagging timbers to the 400-foot station, where he began taking them off, and depositing them at the station in close proximity to the shaft. When all but two or three had been thus removed, the cage was raised to the 300-foot station, without the knowledge of deceased, who, returning to the shaft from where he had placed the last timber, and not observing the absence of the cage, stepped off to where he supposed the cage was, and, falling to the bottom of the shaft, was instantly killed. No defect in the construction or condition of defendant's machinery is claimed, and the only negligence alleged in respect to its operation is that Charles Johnson, who was in charge of the engine when the accident occurred, was a negligent, careless, and unskilled engineer, as defendant then, and for a long time prior thereto, well knew, but which was unknown to deceased, and that Johnson caused the accident by negligently raising the cage, from which deceased was unloading timbers, without any signal or request to do so. As deceased and Johnson were co-employes, defendant is not liable

for the consequences of the latter's negligence unless it neglect-
ed to use ordinary care in employing him as engineer.   Comp.
Laws, § 3753.   Hence plaintiff should not recover unless her
husband's death was caused, without fault on his part, by John-
son's negligence in raising the cage without a signal, and de-
fendant was guilty of negligence in retaining Johnson in the
position of engineer.

At the close of the testimony, defendant moved the court
to direct a verdict in its favor, for reasons, among others,
which may be stated as follows:   (1) There is no evidence of
negligence on the part of Johnson, the engineer; (2) there is
no evidence of negligence on the part of the defendant in em-
ploying Johnson as engineer; and (3) the uncontradicted evi-
dence proves that the negligence of the deceased contributed
to his death.   This motion was sustained.

It is the settled law of this state that when the evidence
given at the trial, with all inferences that the jury could justi-
fiably draw from it, is insufficient to support a verdict for the
plaintiff, so that such a verdict, if returned, must be set aside,
the court is not bound to submit the case to the jury, but may
direct a verdict for the defendant.   Wagon Co. v. Matthiessen,
3 Dak. 233, 14 N. W. 107; Knapp v. Bank, 5 Dak. 378, 40 N. W.
587; Peet v. Insurance Co., 1 S. D. 462, 47 N. W. 532; Haugen
v. Railway Co., 3 S. D. 394, 53 N. W. 769; Randall v. Railroad
Co., 109 U. S. 478, 3 Sup. Ct. 322.   Would the jury have been
justified in finding that Johnson raised the cage without re-
ceiving the proper signal?   It is fair to infer that deceased,
the only person authorized by the company's rules to give the
signal, did not give it.   The bells were directly above the brake-
man, about 20 feet from the engineer—in plain sight of the lat-
ter, but not visible to the former.   The cage was thrown upon
the engine by direction of the engineer, who swears positively
that he heard and saw the bell of the south compartment ring
the proper signal to raise the south cage from the 400 to the
300 foot level.   The brakeman, called as a witness by both

parties, testifies that he does not remember of having heard the signal. He and the engineer agree that the cage was not thrown upon the engine until after the brakeman was directed to do so by the engineer. It is therefore fair to infer that the brakeman did not hear the signal; otherwise he would have thrown the cage upon the engine without waiting for the engineer's order, and without inquiring of him if the signal had been given. No conceivable reason is shown why the engineer should have raised the cage without having received, or having supposed he received, the proper signal. One witness, near the engineer at the time, says he did not hear a signal to raise the south cage. Two others say they did, but are not sure from which compartment it came. Both cages were in use, and signal bells were ringing continuously. Persons whose duties did not require them to carefully note the various signals might subsequently form erroneous impressions of what occurred when there was no reason to give the matter any, or but slight, attention. There are but two reasonable conclusions to be drawn from all the evidence: Either some unauthorized person gave the signal, or the engineer made a mistake. There were numerous persons in the mines who might have given it. It is true, to have done so would have been to violate a rule of the company, likely to result in loss of employment, and perhaps it is not fair to assume that any one would do so; but it is equally unfair to assume that the engineer was negligent in the discharge of his duty. Again, one of the many men employed in the mines may, by mistake, have pulled the bell cord in place of the gong rope. It is more reasonable to account for the accident on this theory than to conclude that the engineer made a mistake, or raised the cage without any signal at all. Certainly, the writer, as a trior of facts, would not find from the evidence, as presented by this appeal, that the proper signal was not given; but that is not the test in determining whether or not a verdict should be directed. If the facts are in dispute, or if, undisputed, they are such that different impartial minds

might fairly draw different conclusions from them, they should be submitted to the jury. Harrison v. Railway·Co., 6 S. D. 100, 60 N. W. 405. It is possible that different impartial minds might have fairly drawn different conclusions from the evidence as it fell from the lips of the witnesses concerning the ringing of this signal, and as to this issue the verdict should not have been directed.

Did defendant neglect to use ordinary care in the selection or retention of its engineer? At the time of the accident, Johnson was about 50 years of age. Excepting a few months, he had been employed by defendant in various capacities for more than 12 years, much of the time as engineer or brakeman in one or another of its hoisting works; and during the entire period it does not appear that he was ever charged with having caused the slightest injury to any one of his numerous co-employes, until the accident involved in this action occurred. He frankly admits in his testimony that, when engineer at the Old Abe hoist, he once failed to reverse the lever of his engine, and one cage was carried into the sheaves, causing it slight damage, but without injury to any person. As we view the evidence, this is the only mistake he ever made which is worthy of mention, and plaintiff wholly failed to prove that he was ever discharged. But, if it should be conceded that he was laid off or discharged because of the accident at the Old Abe, that circumstance would tend to establish·the rigid discipline and extreme caution of defendant's management, rather than a natural disposition to carelessness on the part of the engineer. The machinery at the Old Abe was essentially different in its construction and operation from that in use at the vertical. The accident which happened at the former could not have taken place at the latter. There was nothing in Johnson's conduct in connection with that hoist to suggest that he was unfit to operate the engine at the vertical shaft. During all the time he was employed as brakeman or engineer at either hoist, answering signal bells constantly, it is not shown that he ever

made a mistake concerning such signals; nor is it shown that he was accused of having made a mistake in that respect, until after the death of plaintiff's husband. It is not reasonable to suppose defendant would have retained Johnson in this position, knowing him to be reckless and unskillful; nor is it reasonable to suppose that the men who were working in the mines, and whose lives depended upon Johnson's care and fidelity, knew him to be unsafe and unreliable, without making any complaint. Such was not his reputation. He was sober and industrious, had reached an age when men usually appreciate the responsibilities of life, and seems to have enjoyed the confidence of every one connected with the mines, including the deceased, when this fatal accident occurred. After a careful consideration of the entire record, we are unable to discover any view of the evidence which would justify a jury in returning a verdict for plaintiff upon the issue of defendant's negligence in the selection and retention of its engineer.

In the view we have taken, the question of contributory negligence becomes immaterial, but it may not be improper to observe that it is extremely doubtful if the fatal consequences of this unfortunate accident are not directly attributable to want of proper care on the part of plaintiff's husband. The station was properly lighted. Should he not have observed the absence of the cage? Did the decision depend upon this issue, it would be interesting to consider whether one who is working in a mine, and who must assume the ordinary risks of his peculiar employment, acts with usual and ordinary prudence, who attempts to step upon a cage without first looking to see if it is in place or not. An employer is not bound to indemnify his employe for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed. Comp. Laws, § 3753. Accidents frequently occur in mining operations, under the most enlightened and prudent management. It does not follow, simply because one person has been injured, that another should respond in damages. Reason and

justice demand that two conditions should exist, namely, fault on the part of the party charged with causing the injury, and freedom from contributory fault on the part of the injured. The learned circuit judge, with all the witnesses before him, having decided, upon defendant's motion to direct a verdict, and again in denying plaintiff's motion for a new trial, that there was not sufficient evidence to support a verdict for plaintiff, this court has no hesitancy in deciding that the judgment appealed from should be affirmed.